### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| JESSE C. GARMON, B23470, | |
| *Plaintiff,* | |
| v. | Case Number:  3:13-cv-00287-SMY-PMF |
| ZACHARY ROECKEMAN,<br>ROBERT CRAIG, JACK TOWNLEY,<br>ERIC RUSSELL, K. BROWN and<br>MAJOR ROUSEY, | |
| *Defendants*. | |

### MEMORANDUM AND ORDER

This is a prisoner civil rights lawsuit. Plaintiff Jesse Garmon is an inmate with the Illinois Department of Corrections ("IDOC") and Defendants are IDOC employees. Garmon filed suit on March 22, 2013 (Doc. 1) asserting that Defendants violated his constitutional rights when he was at Big Muddy River Correctional Center ("BMRCC"). Judge Gilbert screened Garmon's Complaint pursuant to 28 U.S.C. § 1915A and held that Garmon articulated two colorable claims:

**Count 1:** Eighth Amendment claim against Roeckeman, Craig, Townley, and Russell for failing to provide the plaintiff with adequate hygiene supplies,

**Count 2:** First Amendment retaliation claim against Brown and Russell for retaliating against the plaintiff because he filed grievances regarding the hygiene supply issue.

Defendants Roeckeman, Townley, Craig and Brown now move for summary judgment.[1] For the following reasons, Defendants' motion is **GRANTED** as to Defendants Roeckeman, Craig and Townley and **DENIED** as to Defendant Brown.

### BACKGROUND

Garmon has been in and out of IDOC custody since the early 1990's, but the incidents that give rise to this litigation occurred in January through March of 2013 at BMRCC. (Garmon deposition, Doc. 81-1, p. 9). Garmon was initially arrested on July 4, 2012 and placed in county jail. *Id.* at p. 17. He was transferred to IDOC intake at Graham Correctional Center ("Graham") on October 12, 2012. *Id* at p. 17. Garmon was then transferred from Graham to BMRCC on January 23, 2013. *Id.* at p. 11.

When Garmon arrived at BMRCC, he received a one week supply of hygiene products. *Id.* at p. 18. This consisted of two small boxes of Whisk laundry detergent, a small bar of soap, a small toothbrush, a container of toothpaste, a comb, a disposable razor, a roll of toilet paper and an ink pen. *Id.* at p. 26. Garmon also arrived at BMRCC with a negative balance of about $10.00 in his prison trust fund account (he owed the IDOC for some unrelated legal fees and for some underwear he had purchased at Graham), and was unable to purchase additional hygiene items at the prison commissary.[2] *Id.* at p. 17. When Garmon's supply of hygiene products ran out in early February 2013, he was forced to trade his food trays for more supplies, or as was often the case, go without. *Id.* at p. 16.

---

[1] Defendant Major Rousey was dismissed in Judge Gilbert's 28 U.S.C. § 1915A screening order. Defendant Eric Russell was not dismissed, but has not participated in this lawsuit since being served. An entry of default of was issued against Russell (Doc. 46) but a default judgment has not been entered.

[2] Garmon testified at his deposition; "So anyway, July 4th, 2012 I got arrested. I had no money when I went to jail, and I had a pair of shorts and a dago t-shirt and a pair of tennis shoes and socks. No visits. No money." (Doc. 81-1, p. 16-17).

Prisoners in IDOC custody are generally entitled to a minimum of $10.00 in state pay per month. (Doc. 81-1, p. 21). Garmon received his first state pay at BMRCC in mid-February 2013. *Id.* at p. 18. Sometime shortly thereafter, he went to the prison commissary to purchase soap and other needed supplies. However, at the commissary, Garmon became aware that he had only received a little over $2.00 in state pay (it is unclear from the record as to why he did not receive the full $10.00) and that his prison trust fund account still maintained a negative balance of about $7.70. *Id.* at p. 18. Garmon was therefore unable to purchase any items.

Garmon spoke to and filed a grievance with his counselor, Eric Russell, regarding the hygiene supply issue. (Doc. 81-1, p. 18). Garmon requested that Russell provide him with an "indigent bag." *Id.* at p. 19. Russell responded by telling Garmon that BMRCC does not provide indigent bags to prisoners. *Id*. Garmon testified at his deposition that Kenneth Brown, Garmon's wing officer, also became aware that Garmon was protesting his lack of hygiene supplies. *Id*. As a result, Brown repeatedly punished Garmon by locking him and his cellmate in their cell during otherwise open dayroom periods. *Id*. at p. 20. Garmon also testified at his deposition that Brown destroyed or otherwise obstructed the grievances he had filed. *Id.* at p. 63.

In addition to Russell and Brown, Garmon also complained about his hygiene supply problem to Jack Townley, a lieutenant at BMRCC, Assistant Warden Robert Craig and Zachary Roeckeman, BMRCC Warden. One evening, Garmon spoke to Townley, notifying him of the hygiene supply issue. (Doc. 81-1, p. 44). Townley told Garmon that he should contact the prison clothing office. *Id.* Townley did not provide any additional assistance. Garmon also discussed the issue with Assistant Warden Craig as Garmon was walking to chow one day. (Doc. 81-1, p. 55). Craig instructed Garmon to send a request to the Warden. *Id.* Sometime in late February or early March, 2013, Garmon sent a written request to Warden Roeckeman for an indigent bag. (Doc.

3

81-1, p. 53).   Warden Roeckeman apparently dismissed the issue and notified Garmon that he would not qualify as indigent if there was any money in his trust fund account. *Id.*

The record is not clear as to when Garmon had the ability to start purchasing his own hygiene products at the prison commissary, but one of Garmon's prison trust fund statements indicates that he was able to make regular purchases from at least June, 2013 onwards. (Doc. 50-1, p. 12).   Attached to Defendants' Motion for Summary Judgment are declarations signed by Roeckeman (Doc. 81-1, p. 1), Townley (Doc. 81-1, p. 79) and Brown (Doc. 81-1, p. 80). Defendants note that a prisoner in Garmon's situation would have been directed to contact the BMRCC clothing unit and that he would not have been subject to retaliation for filing grievances.   Garmon filed this lawsuit on March 22, 2013. (Doc. 1). Defendants Roeckeman, Townley, Craig and Brown now move for summary judgment. (Doc. 80).   Garmon filed a response in opposition. (Doc. 87).

## ANALYSIS

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When presented with a motion for summary judgment "all evidence must be construed in the light most favorable to the party opposing summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 261 (1986). The summary judgment phase of litigation has been described as the "'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003).

Defendants' motion for summary judgment presents several arguments: (1) that Defendants Roeckeman and Craig were not personally involved in the alleged constitutional deprivation; (2) that Defendant Townley did not exhibit deliberate indifference; (3) that the retaliation claim against Brown must fail because there is no causal link to any First Amendment activity; and (4) that Defendants are entitled to qualified immunity. Each argument will be addressed in turn.

The Eighth Amendment prohibits cruel and unusual punishment and it is applicable to the states through the Fourteenth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 344 – 345 (1981). "[A] prison official violates the Eighth Amendment only when two requirements are met." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, the prisoner plaintiff's claimed deprivation must be objectively serious and second; the prison official must demonstrate "deliberate indifference." *Id.* Deliberate indifference is a level of culpability above ordinary negligence, and it means to consciously disregard a known risk. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004).

Pursuant to the Eighth Amendment, prisoners may not be deprived the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. However "[n]o static test exists that measures whether conditions of confinement are cruel and unusual, for the Eighth Amendment draws its meaning from the 'evolving standards of decency that mark the progress of a maturing society.'" *Talib v. Gilley*, 138 F.3d 211, 214 (5th Cir. 1998) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). In determining whether a deprivation violates the Eighth Amendment, courts must consider the "amount and duration of the deprivation" *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999) while being mindful of the "[S]tate's interests in prison safety and security." *Washington v. Harper*, 494 U.S. 210, 223 (1990). The Seventh Circuit has repeatedly

held that deprivations of hygiene supplies for extended periods of time violate the Eighth Amendment. *Board v. Farnham*, 394 F.3d 469, 479 (7th Cir. 2005) (county sheriff not entitled to qualified immunity on pretrial detainee's claim that he was denied toothpaste for three weeks); *James v. O'Sullivan*, 62 F. App'x 636, 639 (7th Cir. 2003) (IDOC prisoner stated Eighth Amendment claim when denied soap, toothpaste and toothbrush for 49 days); *cf. Myrick v. Anglin*, 496 F. App'x 670, 675 (7th Cir. 2012).

Defendants Roeckeman, Craig and Townley do not argue that the Garmon's lack of hygiene supplies was not objectively serious, but instead argue that they were not deliberately indifferent to the problem. Specifically, Roeckeman and Craig argue that their lack of personal involvement precludes liability and Townley argues that he did not exhibit deliberate indifference. The Court agrees.

Garmon only mentioned the hygiene supply issue in passing to Craig and Townley. Craig told Garmon to write to the Warden and Townley told Garmon to contact the clothing department. In the absence of some emergency, such minimal contact is insufficient to attach § 1983 liability. Moreover, Warden Roeckeman's communications with Garmon indicate that he believed Garmon did have money in his trust fund account. Although he was mistaken, Warden Roeckeman's conduct is not actionable under these circumstances. See *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996) ("a supervising prison official cannot incur § 1983 liability unless that officer is shown to be personally responsible for a deprivation of a constitutional right"). Of course, Garmon's Eighth Amendment claim against Russell survives because he was not a party to the motion for summary judgment.

The next issue is Garmon's retaliation claim against Brown and Russell. Brown argues that he is entitled to summary judgment because Garmon has failed to establish a causal link

between the alleged wrongful conduct and any First Amendment activity. To succeed on a First Amendment retaliation claim, a prisoner must establish that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

In this case, the filing of non-frivolous prison grievances is protected by the First Amendment, see *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) and being denied dayroom privileges would likely deter such activity in the future. Brown argues that there is no causal link or "motivating factor" evidence, but Garmon asserts that he and his cellmate were locked in their cell (when other prisoners were allowed out) not long after he started complaining about the hygiene supply issue. Under these circumstances, Garmon has provided sufficient circumstantial evidence to survive summary judgment on his retaliation claim.

Defendants also argue in general terms that they are entitled to summary judgment on the basis of qualified immunity. As to Defendant Brown, this argument is without merit. Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Here, Garmon presents sufficient facts to show that he was subject to First Amendment retaliation. Moreover, the right to not be subject to such retaliation was clearly established in early 2013 when the alleged unlawful conduct occurred. See *Bridges*, 557 F.3d at 546.

## CONCLUSION

Defendants' Motion for Summary Judgment is GRANTED as to Roeckeman, Craig and Townley and DENIED as to Brown.

**IT IS SO ORDERED.**

**Dated: June 7, 2016**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**UNITED STATES DISTRICT JUDGE**
